The State ex rel. Gordon v. Hopkins.

| | |
|---|---|
| 87 | 519 |
| 39a | 469 |
| 87 | 519 |
| 120 | 681 |
| 87 | 519 |
| 130 | 237 |
| 87 | 519 |
| 159 | 653 |

THE STATE *ex rel.* GORDON, *Collector*, v. HOPKINS *et al.*, *Appellants.*

**Back Taxes, Jurisdiction of Justices in Suits to Enforce State's Lien for.** Justices of the peace have no jurisdiction in suits to enforce the state's lien for back taxes.

*Appeal from St. Clair Circuit Court.*—HON. CHAS. G. BURTON, Judge.

REVERSED.

*Johnson & Lucas* for appellants.

A forcible and cogent reason indicating that the legislature intended that courts of record should exercise jurisdiction in back tax suits is found in the repeal of sections 194, 204 and 219, of the revenue act of 1872, and the adoption of section 6837, Revised Statutes, 1879, which requires the action to be brought against the owner of the land. What could have been the object of this provision, other than to require the state to so institute its action that no judgment could be recovered until it made manifest the fact that the defendant—the owner of the land—had no defence against the demand of the state, and what could have remedied the evil more certainly than for the purchaser at the tax sale to know that a court of record had solemnly declared that the defendant was the owner of the property, and that no defence could be offered to the title conveyed by such sale. Would the title be brought in question? See authorities cited by the court in the opinion, and *Brooks v. Dalrymple*, 1 Mich. 145. It is, however, contended that by the words, "which said court shall have jurisdiction without regard to the amount sued for," that the legislative intent is made plain, we submit that this language is shown by the journal of the house to have in its inception been applied to circuit courts alone. But counsel for respondent further cite section 7, act 1877, section 4, act 1879, section 12, act 1879, and claim that these acts indicate legislative intent. We unhesitatingly affirm that they do not indicate intent, but construction. As to legislative construction, see *Governor v. Porter*, 5 Ham. (Tenn.) 169; *Lafayette ex rel. v. Knowlton*, 2 Chand. (Wis.) 219; *Tilford v. Rainey*, 43 Mo. 419; *Pitman v. Adams*, 44 Mo. 585. Against the conjectural theory of intention, urged by counsel for respondent, we submit that jurisdiction cannot be conferred by implication. See author-

ities cited in opinion of court. Also, *Spear v. Carter*, 1 Mich. 19. As to the rule of *stare decisis*, see *State v. Miller*, 50 Mo. 129 ; *Long v. Long*, 79 Mo. 656 ; *Johnson v. Cass Co.*, 95 U. S. 369; *Church v. Brown*, 21 N. Y. 334; *Smith v. Henry*, 2 Eng. (Ark.) 207 ; *Frink v. Dark*, 14 Ill. 310.

*E. J. Smith* and *W. P. Sheldon* for respondent.

(1) It is settled that justices of the peace have jurisdiction to render judgments for the enforcement of the state's lien for back taxes. *Van Brown v. Van Avery*, 75 Mo. 530; *State ex rel. Petts v. Staley*, 76 Mo. 158. The point that no jurisdiction was acquired over defendant, Hopkins, is not well taken. There is no local jurisdiction of a justice of the peace in tax cases, save that it must be a court of the county where the land lies. R. S., sec. 6836. The order of publication against Woodbury was proper. Sec. 6836, *supra ; Jackson v. Wood*, not reported ; 75 Mo. 530 ; 76 Mo. 158. (2) Whether the order of publication was properly made or not cannot be raised collaterally on a motion to quash execution. *Phillips v. Evans*, 64 Mo. 17. The same may be said of the point raised, that the assessment books were not verified. (3) In any event, the overruling of the motion to quash was correct, because the execution was not within the control of the circuit court.

*Thos. T. Gantt, A. & J. F. Lee, D. H. McIntyre,* and *Dinning & Byrns* also for respondent.

NORTON, J.—This is an action instituted by respondent against appellants, before one J. Wade Gardner, a justice of the peace, for the enforcement of an alleged lien of the state for taxes, alleged to be due for the years 1873, 1874, 1876, 1878, 1879, and 1881, on lot thirteen (13), block fifteen (15), town of Appleton City, St. Clair

county, Missouri. At the time of the institution of said
action, the defendant, John R. Hopkins, resided in Ap-
pleton township, in said county, which was not an ad-
joining township to that of Osceola, in which Justice
Gardner resided, and the defendant, Woodbury, perma-
nently resided in the City of Kansas, in the county of
Jackson, which facts were known at the time to the re-
spondent, his counsel, the court, and the officer to whom
the process was directed. The constable returned said
process served on the defendant, Hopkins, in Appleton
township, St. Clair county, and returned the defendant,
Woodbury, not found; whereupon the justice issued an
order of publication for the defendant, Woodbury, which
was duly published.

On the return day of the order of publication, the
justice rendered judgment and thereafter filed transcript
in the office of the clerk of circuit court, on which execu-
tion was issued and delivered to sheriff of said county,
who advertised same for sale at September term, 1883,
of said county, at which term appellants filed their mo-
tion to quash, and showed all the facts herein to the
court, St. Clair county being governed by the township
law from July 1, 1872, to August, 1877, the agreed state-
ment of facts being as follows:

"1. That on the twentieth day of August, 1883,
the relator recovered before J. Wade Gardner, a justice
of the peace of Osceola township, St. Clair county, Mis-
souri, a judgment by default against defendants enforc-
ing the lien of the state for taxes due for the years 1873,
1874, 1876, 1878, 1879, and 1881, on lot thirteen (13),
block fifteen (15), town of Appleton City, St. Clair
county, Missouri. 2. That service was had on the de-
fendants, as follows: On the defendant, John R. Hop-
kins, by reading a copy of the writ to him in Appleton
township, in said county; on the defendant, Frank H.
Woodbury, by order of publication, summons having
first been returned *non est*, and the justice finding and

entering of record, that he is satisfied that the summons cannot be served on said defendant, Woodbury. 3. That at the time of the institution of said action, and ever since, the defendant, John R. Hopkins, resided in Appleton township, in said county, and the defendant, Frank H. Woodbury, in the county of Jackson, in the state of Missouri; that Appleton township does not adjoin Osceola township. 4. That for the years 1873, 1874 and 1876, the assessment rolls are not verified by the assessor, as required by law. 5. That no affidavit of non-residence was ever filed against Woodbury."

The trial court overruled the motion to quash the execution, and entered judgment accordingly, from which defendants have appealed. The controlling question which the record presents is this: Have justices of the peace jurisdiction, that is, the power to hear and determine suits brought to enforce the state's lien for unpaid back taxes? Before such a power can be affirmed to exist it must be made to appear that the law has given such officers the capacity to entertain the complaint against the person or thing sought to be charged or affected; that such complaint has been preferred, and that such person or thing has been properly brought before the court or tribunal to answer the charge therein contained. *Gray v. Bowles,* 74 Mo. 419. Justices of the peace, as well as the jurisdiction to be exercised by them in the courts they are authorized to hold, are created and regulated by statute, and they can only exercise such jurisdiction as the law creating them confers, and being inferior courts not exercising jurisdiction according to the course of the common law, they can take nothing by implication. In Wells on Jurisdiction, page 26, section 30, the rule upon this subject is stated as follows: Nothing will be presumed to be without the jurisdiction of a superior court of general jurisdiction, and nothing presumed to be within the jurisdiction of an inferior court having limited or special jurisdiction. In the case

of *Coil v. Pitman's Adm'r*, 46 Mo. 52, this court, in speaking of the jurisdiction of county courts, said "that when the statute has not clearly devolved jurisdiction on the county court, we are not disposed to give it by implication;" and in the case of the *State ex rel. v. Shortridge*, 56 Mo. 126, in speaking of inferior courts, it is said: "There can be no such thing as an implied power in a county court to levy a tax. The power must be clearly and expressly given by statute;" and in the case of *Jefferson County v. Cowan*, 54 Mo. 234, it was observed that a more salutary rule does not exist, nor one longer sanctioned by reason, experience and authority than that which circumscribes courts of limited powers and statutory origin within the confines of the statute which gives them being, and pronounces all their acts void which overstep the narrow boundary.

In *Jones & Crawford v. Reed*, 1 Johnson Cases, 20, in treating this question, it is said: "It is a clear and salutary principle that inferior jurisdictions, not proceeding according to the course of the common law, are confined strictly to the authority given them. They can take nothing by implication, but must show the power expressly given them in every instance." To the same effect are the following cases: *Thompson v. Cox*, 8 Jones (N. C.) 311; *Board, etc., v. The People*, 20 Ill. 525; *Downing v. Florer*, 4 Col. 209; *Ford v. Babcock*, 1 Denio, 158.

It follows, therefore, from what has been said, that unless it can be shown otherwise than by implication that justices of the peace have been invested with jurisdiction over suits for the enforcement of the state's lien for unpaid back taxes, that a negative answer must be returned to the question which this record presents. It is claimed by the attorney-general that jurisdiction in such cases is given to justices of the peace by section 6836, Revised Statutes. This section was enacted in 1879, as an amendment to section 5, acts 1877, page 386,

which former section is as follows: "If on the first day of January, 1878, any of said lands or town lots contained in said 'back tax book' remain unredeemed, it shall be the duty of the collector to proceed to enforce the payment of the taxes charged against such tract or lot, by suit in the courts of competent jurisdiction of the county where the real estate is situated, which said courts shall have jurisdiction, without regard to the amounts sued on, to enforce the lien of the state or such cities, and for the purpose of prosecuting suits for taxes under this act, the collector shall have power, with the approval of the county court, or in such cities, with the mayor thereof, to employ such attorneys as he may deem necessary, who shall receive as fees in any suit such sum, not to exceed ten per cent. of the amount of taxes actually collected and paid into the treasury, as may be agreed upon in writing and approved by the county court, or in such cities, the mayor thereof, before such services are rendered, which sum shall be taxed as costs in the suit and collected as other costs, and no such attorney shall receive any fee or compensation for such services, except as in this section provided, and it shall be the duty of the collector, when suit shall have been commenced against any tract of land or town lot on said 'back tax book,' to note opposite said tract or lot, such fact, also, against whom suit has been commenced."

It is clear to my mind that this section neither conferred jurisdiction upon, nor authorized suits to be brought before justices of the peace for the enforcement of the state's lien for back taxes. It simply authorized suits to be brought in the courts of competent jurisdiction of the county where the real estate bound for the tax was situated, in no way conferring upon, enlarging or restricting the jurisdiction of such courts, otherwise than by providing that they should exercise the jurisdiction already possessed without regard to the amount involved. That justices' courts were not courts of competent juris-

diction in such cases, is manifest from the fact that while in the general law creating justices of the peace, conferring jurisdiction upon them and authorizing them to hold courts for the purpose of exercising the jurisdiction conferred, nothing is to be found empowering them to hear and determine any cause for the enforcement of a lien against real estate, except in mechanic's lien cases to a limited extent; but, on the contrary, a positive prohibition is to be found declaring that "no justice of the peace shall have jurisdiction to hear or try any action when the title to any lands or tenements shall come in question and be in issue, nor of any strictly equitable proceeding." Sec. 2837, R. S. While it is neither contended that said section 5 of the act of 1877 confers jurisdiction, nor that the general law creating justices and defining their jurisdiction gives them power to try such causes as the one before us, it is insisted that the power was given in an amendment made to said section 5 by the general assembly in 1879. Acts 1879, p. 188, sec. 4. The amendment made by said section 4 of the act of 1879 to said section 5 of the act of 1877, consisted in adding to it the following: "And in all cases before justices of the peace where suit is brought for the enforcement of liens as above, where summons shall have been issued against any defendant, and the officer to whom it is directed shall make his return that the defendant cannot be found, the justice of the peace before whom the suit is pending, being first satisfied that the summons cannot be served sh ll make the order as above; and every order of publication against non-resident defendants shall be published in some newspaper published in the county where the suit is pending, or if there be no newspaper published in such county then said order shall be published in any newspaper published nearest the county where the suit is pending, to be designated by the justice of the peace before whom the suit is pending; the publication shall be for four successive weeks, the last insertion

The State ex rel. Gordon v. Hopkins.

to be at least ten days before the day named in said order." It further provides as to how the proof of publication shall be made, and for the rendition of judgment in case of default and authorizes the taxation of certain costs.

The amendment thus made does not confer any jurisdiction upon justices of the peace, but simply provides the method of exercising a jurisdiction which the general assembly took for granted had been conferred, but which in fact had not been conferred. It is competent for the legislature to confer such jurisdiction upon justices as is not prohibited by the constitution, as it may choose, and then to prescribe the method of exercising the jurisdiction when conferred. An example of this is to be found in the act relating to suits before justices to enforce mechanic's liens, in the first section of which jurisdiction is expressly given and the following sections regulate the method of exercising it. Section 2872 and the following sections of Revised Statutes. But it is not in section 6836, which only prescribes the method of exercising a jurisdiction in a class of cases over which jurisdiction had not been conferred either by said section or any other. A law simply prescribing the method of exercising jurisdiction by an inferior court, in a class of cases where jurisdiction has not been conferred, cannot have the effect of conferring jurisdiction, unless the rule heretofore adverted to, that such courts can take nothing by implication, is ignored. The section as amended is section 6836 of Revised Statutes.

It will be observed that, as the section stood before the said amendment was made, it did not attempt to confer jurisdiction upon any court, but simply imposed a duty upon county collectors to institute suits to enforce the payment of back taxes, and in the performance of this duty required them to institute such suits in the courts of competent jurisdiction of the county where the land was situated against which the tax was a charge,

with the further provision that such courts should have jurisdiction without regard to the amount sued for. At the time of this enactment there were only two classes of courts in the state which were courts of competent jurisdiction to entertain such suits as it was made the duty of collectors to institute. These were circuit courts and courts of common pleas, and of the latter there were but five, viz: one in each of the counties of Greene, Pike, Marion, Randolph and Cape Girardeau; all of which were limited in jurisdiction as to the amount involved in suits brought in them, and this was doubtless in the mind of the legislature when the provision as to amount was placed in the law. The amendment of the section left the duty, which it imposed upon collectors to bring these suits in courts of competent jurisdiction, unchanged, and just where it was before the amendment, and the most that can be said of the amendment is that it raises an implication that the framers of it supposed that under the general law justices' courts were courts of competent jurisdiction in that class of cases, which implication is, as I have attempted to show, rebutted by the general law, which, instead of giving such jurisdiction, absolutely forbids it.

There is another view which seems to me to be conclusive of the question involved. It is this: Section 6837, Revised Statutes, provides that "all actions commenced under the provisions of this chapter shall be prosecuted in the name of the state of Missouri at the relation and to the use of the collector, and against the owner of the property." It follows, I think, from this, that in suits of this character the title to real estate is involved, because the question as to who is the owner of the land sought to be charged with the tax can only be ascertained by determining who has the title, and if the question, of title is involved in such cases then justices of the peace have no jurisdiction to pass upon such question, for the reason that in section 2837, Revised Statutes, it is ex-

pressly declared that "no justice of the peace shall have jurisdiction to hear and try any action * * * where the title to any lands or tenements shall come in question and be in issue, nor of any strictly equitable proceeding." When the fact is considered that justices' courts are not courts of record, that the dockets which justices are required to keep, as well as the papers in causes tried before them, are liable to be lost, mislaid or destroyed in transmission from one justice to his successor or successors in office, the wisdom of the statute denying to them jurisdiction in any case involving title to real estate becomes manifest. In order to determine that justices of the peace have jurisdiction in the class of cases to which the one before us belongs, it must not only be held that said section 2837 is repealed by implication, but that this result is accomplished by a statute which does not expressly, but at the most only by implication confers a jurisdiction which said section denies. Such holdings as these would be violative of two salutary rules of law : first, that a justice of the peace cannot take jurisdiction by implication ; second, that repeals by implication are not favored and are only allowable when a later statute is so repugnant to and irreconcilable with a former one that both cannot stand together.

In short, in order to be able to hold that a justice of the peace has jurisdiction in such cases, two things are indispensably necessary. First, to show that the statute denying jurisdiction to justices of the peace in cases involving title to land has been repealed. Second, to show that some statute expressly confers such jurisdiction on justices in cases to enforce the payment of taxes. Neither of these things appears in the section of the statute relied upon. I am aware that the conclusion above announced is in conflict with that declared in the case of *Van Brown v. Van Every*, 75 Mo. 530, and the case of the *State ex rel. v. Staley*, 76 Mo. 158. In the first of these cases it

may be said that the principal question discussed was as to whether there was enough in the section, as amended, to indicate that a justice of the peace could make an order of publication, and in holding that there was, it was observed that the jurisdiction of the justice was incontestable. The question of jurisdiction as to subject matter was not discussed in the opinion. In the case of *State ex rel. v. Staley, supra,* the former case was simply followed, also without discussion of the question. For the error committed in overruling the motion to quash the execution, the judgment will be reversed and the cause remanded with directions to the circuit court to sustain the same. Judges Sherwood and Ray concur. Judge Henry dissents. Hough, C. J., absent.

HENRY, J., DISSENTING.—Dissenting from the foregoing opinion, I shall briefly state the reasons for my dissent. I have never entertained a doubt that the general assembly has conferred jurisdiction upon justices' courts to enforce the state's lien for taxes. This court has so held in two cases, and thousands of acres of land, on the faith of those adjudications, have been purchased under executions issued upon judgments rendered by justices of the peace in such cases, and, upon the principle of *stare decisis* alone, they should be adhered to. But there is no necessity for invoking that doctrine to sustain these decisions.

Sections 6836, 6837, 6838 of the revenue law, distinctly confer the jurisdiction, and regulate the practice of justices' courts in suits to enforce the state's lien for taxes. I do not question the doctrine that such inferior tribunals have no jurisdiction, except such as is distinctly conferred upon them by the legislature, and, when any doubt exists on that question the jurisdiction should be denied. But where the intent to confer the jurisdiction is clearly deducible from the language employed by the legislature, the doctrine has no application. Section 6836

provides that suits may be instituted to enforce the pay-
ment of taxes, "in the courts of competent jurisdiction
of the county," and "in all cases before justices of the
peace, where suit is brought for the enforcement of liens
as above, when summons shall have been issued," and
return is made that the defendant cannot be found, the
justice shall make an order of publication, which shall
be published, etc.    Section 6838 provides that a transcript
of the judgment, rendered by a justice in such case, may
be filed in the office of the clerk of the circuit court, who,
upon application of the collector, shall issue a special
*fieri facias*, and section 6837 provides that, "In all suits
under this chapter, the general laws of the state, as to
practice and proceedings in civil cases, shall apply so far
as applicable, and not contrary to this chapter."

Can it be doubted that the legislative intent was to
confer jurisdiction upon justices' courts in suits for taxes ?
Not only are there special provisions applicable to those
courts, but by a general provision, the practice and pro-
ceedings in civil cases, as prescribed by the general law,
are expressly applicable to all suits for taxes in whatever
court instituted, provided they are not contrary to the
general revenue law.    That portion of section 6836, which
declares that, "In all cases before justices of the peace,"
etc., was an amendment to sections of the act of 1877,
adopted in 1879.    Why was it enacted ?  Had the general
assembly nothing in view to accomplish by its enact-
ment ?   To say the least, of itself, it is a recognition of
the justices' jurisdiction, and certainly has effect as a
legislative construction of the preceding clause, by which
jurisdiction was conferred in these cases, "upon the
courts of competent jurisdiction of the county, without
regard to the amount sued for."   This might not have
been sufficient, without further legislation prescribing the
practice in such proceedings before justices of the peace,
but, in the subsequent sections this is supplied, and all
that was required, even by the argument in the majority

opinion, was a formal declaration that justices of the peace should have jurisdiction in such cases, and that the legislature so intended, and so construed their own legislation, is as manifest as if it had been declared in that form.

But, to place the matter beyond all controversy, and to remove any doubt, if the language of the above sections admitted of any, the emergency clause in the act of 1879 declares that : "This act shall take effect, and be in force from and after its passage, the emergency being to save the cost attending the bringing of suits for small amounts in courts of record, and the delay attending the collection of taxes by such suits     *     *     * and to settle the indefinite and uncertain jurisdiction of courts." Section 5, of the act of 1877, did not contain that portion of section 6836, *supra*, relating to justices of the peace, while sections 6837 and 6838 of the revenue law were embodied in that act, and these several sections gave rise to the controversy with respect to the jurisdiction of justices of the peace, and it is with reference to that question that it is declared in section twelve of the act of 1879, that the emergency is, " to settle the indefinite and uncertain jurisdiction of courts," and this, in connection with the further declaration in that emergency clause, that it is " to save costs of bringing suits for small amounts *in courts of record*," and " the delay attending the collection of taxes *by such suits*," leaves it beyond any doubt or question that the intent of sections 6836, 6837 and 6838 was to give jurisdiction to justices of the peace to enforce the state's lien for taxes. Such being the case it is not for the judiciary to prescribe the formula in which that intent should be expressed by the legislature. What we have to do is to ascertain that intent from the language employed in the act, and when clear, to give it effect.

It may have been bad policy to confer such jurisdiction upon justices of the peace, but, as a judicial tribu-

nal, we have no concern with that question. I am not, however, of the opinion that it is unwise legislation. I think it a salutary and necessary law, intended to provide a summary and less expensive mode for the collection of taxes than the slow, tardy and expensive proceeding in the circuit court. It is in the interest of the property holder who, as every citizen should, pays his taxes, and for years, in this state, this class of our citizens have not only paid theirs, but the taxes of others who pay none, hoping, with too much ground to base the hope upon, that on some technicality the courts would relieve him of the burden imposed upon his property.

### On re-hearing.

PER CURIAM.—The court adheres to the opinion delivered in this cause heretofore and the judgment of this court will be in accordance with that opinion. Henry, C. J., dissents, for the reasons assigned in his dissenting opinion heretofore filed. Black, J., concurs in the dissenting opinion.