## CHARLES H. TURPIN v. ANTHONY W. POWERS, Appellant.

In Banc, March 13, 1917.

1. **ELECTIONS: Voting: Two Names for Same Office.** The statute (Sec. 5909, R. S. 1909) specifically provides that if a ballot contains a greater number of names for any office than the number of persons required to fill such office, it shall be considered as fraudulent as to the whole number of names designated to fill such office. And where two constables for the same district were to be elected, the writing by 38 voters of their own names on or just under the dotted line below the printed names of the two nominated candidates for that office, made those ballots void for all three.

2. ———: ———: ———: **Writing Voter's Own Name on Ballot.** A voter has a right to vote for himself, and if he writes his name under the caption for an office, and thereby more unscratched names remain on the ballot than there are persons to be elected to that office, that ballot cannot be counted for himself or any candidate for that office.

3. ———: ———: **Counting Void Ballots.** If contestant can be given the office only by counting illegal ballots for him, contestee should be awarded the office.

Appeal from St. Louis City Circuit Court.—*Hon. Leo. S. Rassieur,* Judge.

REVERSED.

*Holland, Rutledge & Lashly, Ernest A. Green* and *Thomas A. Dwyer* for appellant.

(1) The circuit court of the city of St. Louis has no jurisdiction to try a contest involving the office of constable in said city. (a) Contestant undertook to prosecute his election contest under authority of Sec. 5924, R. S. 1909, but that section enumerates and specifies *eo nomine* the offices it was intended to cover, and the office of constable is excluded. Taffe v. Ryan, 25 Mo. App. 563. (b) Contestant then urged that Sec. 7633, R. S. 1909, conferred power and jurisdiction upon the circuit court to try this class of cases. But this section is void. It is in violation of section 53 of article 4 of the Constitution, and particularly sub-sections 2, 15, 17 and 32 thereof. It is a special and local law applicable in terms to the city of St. Louis alone. (c) Section 7633 is not responsive to the title of the article in which it appears. Art. 4, sec. 28, Constitution; Williams v. Railroad, 233 Mo. 666; State v. Coffee Co., 171 Mo. 635; State ex rel. v. Jackson County, 102 Mo. 537; Kansas City v. Payne, 71 Mo. 162; State v. Distilling Co., 237 Mo. 106; Laws 1879, p. 41. (d) A special or local law is defined to be a law which in terms is applicable to a particular political subdivision, and the term has especial application where the same subject-matter could be covered by legislation of general scope. Dunne v. Railroad, 131 Mo. 1; Henderson v. Koenig, 168 Mo. 374; State ex rel. v. Messerly, 198 Mo. 351; State ex rel. v. Williams, 232 Mo. 56. (2) An election contest as well as every step in the procedure thereof, is purely statutory, and no power inheres in any court in this State to proceed with such an action; nor can any court derive general jurisdiction or power to take the necessary steps or procedure in such an action, excepting it be by and through express authority of a statute. State ex rel. v. Spencer, 166 Mo. 285; State ex rel. v. Hough, 193 Mo. 615; Ewing v. Francis, 87 Mo. 487; Kehr v. Columbia, 136 Mo. App. 322; Art. 8, sec. 9, Constitution. (3) The record shows that the court counted for contestant thirty-eight ballots which con-

tained a greater number of names beneath the caption "For Constable" than the number of persons required to fill that office. This was error, and those ballots should be disallowed respondent. Sec. 5909, R. S. 1909; Clark v. Robinson, 88 Ill. 500; Blankenship v. Israel, 132 Ill. 514; People v. Loomis, 8 Wend. 396; State v. Griffey, 5 Neb. 161; McCrary on Elections, sec. 533. (a) This is true whether such name appear on the poll book as the name of the voter who cast the ballot or not. 15 Cyc. 358. (b) Under the law and the order of re-count in this case, the Board of Election Commissioners had no power or authority to ascertain whether the names so written upon the face of the ballots and under the caption "Constable" were the names of the voters. The power to compare ballots and poll books in such manner as to destroy the secrecy thereof is limited and restricted to instances of specific allegations of fraud. Gass v. Evans, 244 Mo. 338. There is no allegation of fraud with respect to voters' names on ballots in this case. (c) It is immaterial whether these names written upon the face of the ballots under the caption "Constable" are the names of the voters or not; a man has power to vote for himself. Bowers v. Smith, 111 Mo. 45. (d) Nor should the testimony of such alleged voter be received at the trial with respect to any mental reservation or secret intention which he entertained at the time he wrote his name under the caption "Constable." The ballot speaks for itself, and shows upon its face that the voter wrote in a name under the caption of the office in contest, and this act constitutes a vote for that office. Pennington v. Hare, 60 Minn. 146.

*George B. Webster* for respondent.

(1) The circuit court has jurisdiction of a contest for the office of constable in the city of St. Louis. R. S. 1909, sec. 7633; R. S. 1909, sec. 2757; Hehl v. Guion, 155 Mo. 76. Section 7633 is not unconstitutional as being a local or special law where a general law could be made applicable. Laws 1879, p. 41; Constitution, art. 9, secs. 23, 24, and art. 6, sec. 27; State ex rel. v. Field, 119 Mo.

611; State ex rel. v. Yancy, 123 Mo. 391; State ex rel. v. Speed, 183 Mo. 186; State ex rel. 'v. Etchman, 189 Mo. 648; State ex rel. v. Fort, 210 Mo. 532. (2) The ballots cast for the respondent, on which the electors casting them had written their names, were properly counted for him. Where the name written on the ballot is that of the voter, it should be counted. Lankford v. Gebhart, 130 Mo. 621; Hanscom v. State, 10 Tex. Civ. App. 638. The Board of Election Commissioners had the right to discover whether or not the names written on these thirty-seven ballots were the names of the persons who cast them and to certify the fact to the circuit court. Constitution, art. 8, sec. 3; R. S. 1909, sec. 5939; Gantt v. Brown, 238 Mo. 575. The Spencer case, 164 Mo. 23, and the Montgomery case, 181 Mo. 5, are overruled. Gantt v. Brown, 238 Mo. 571. The testimony of witnesses that they cast these ballots and wrote their names on them was properly received. A voter may waive his privilege and testify how he voted or marked his ballot. McCrary, Elections, sec. 492; Lankford v. Gebhart, 130 Mo. 621.

WOODSON, J.—This suit was begun in the circuit court of the city of St. Louis by the plaintiff against the defendant to contest the election of the latter to the office of constable in the Fourth District of said city. The judgment below was for the plaintiff and the defendant appealed to this court.

At the November election in 1914, Charles H. Turpin, the plaintiff, and Floyd E. Bush were the Republican candidates and A. W. Powers and Lawrence Daly were the Democratic candidates for that office, this being one of the districts in which there are two justices and two constables to be elected. Upon the face of the returns Bush and Powers were elected. In due time Turpin brought his contest against Powers. On the contestant's motion an order was made by the court on the Board of Election Commissioners of the city of St. Louis to open the ballot boxes and recount the ballots. In pursuance of the order of recount, the board prepared and

filed in the circuit court a list of the votes, with the numbers thereon, in each precinct in the district, showing for whom such votes were cast, as well as a tabulated statement of the result. This also showed the plaintiff was duly elected to the office mentioned. When the case came on to be heard in the circuit court each ballot claimed by either party was taken up and considered, the court heard such testimony as was offered, and finally rendered a judgment holding the plaintiff had received the majority of lawful ballots cast in the district and that he was lawfully elected to the office. The judgment followed the usual form and required the contestee to surrender the office, together with the records thereof.

I. Counsel for plaintiff insists that the judgment of the circuit court should be affirmed because the abstract of the record does not conform to the rules of this court. After a careful examination of the abstract, in connection with the stipulations made between counsel and the documents filed in pursuance thereof, we are satisfied that there is no merit in this insistance and it is disallowed.

Abstract.

II. Counsel for defendant asks this court to reverse the judgment of ouster for the reason assigned that the circuit court had no jurisdiction to hear and try the cause. This position is stated in this language:

"Respondent has undertaken to prosecute this election contest under authority of section 5924, Revised Statutes 1909, but that section enumerates and specifies *eo nomine* the offices it was intended to cover, and the office of constable is excluded."

After a careful consideration of that statute we are satisfied that the position of counsel is correct and that it does not confer jurisdiction upon the circuit court to try a contested election case for the office of constable; but counsel for plaintiff does not seem to question the soundness of that position, but bases the jurisdiction of the circuit court upon sections 7633 and 2757, Revised Statutes 1909. They read as follows:

Jurisdiction.

"Sec. 7633. In the city of St. Louis, the duties and services required by chapter 28, Revised Statutes of 1909, of the county clerk shall be performed by the register of said city, and those required to be performed by the county court shall be performed by the mayor of said city, except in case of a tie or contested election, which shall be tried in the circuit court; and, so far as applicable, said city shall be considered as a county; and likewise a district in said city shall be held to be the same as a township in said chapter.

"Sec. 2757. At the general election to be held in 1890, and at each general election every two years thereafter, the qualified voters of each township in every county in this State shall elect a constable, who shall be a resident of the township for which he is elected, and who shall hold his office for two years and until his successor be elected and qualified: Provided, that in townships that now contain or may hereafter contain a city of over one hundred thousand and less than three hundred thousand inhabitants, and which has been or may hereafter be divided into justice of the peace districts, the constabulary districts of said township shall be made to conform to and be coextensive with such justice districts; the county court shall appoint an additional constable for each of said districts, who shall, in addition to his other qualifications as herein provided, be a resident of the district for which he is appointed or elected, who shall hold his office until the next general election, at which time there shall be elected in all such townships a constable for each of said districts. The judges and clerks of election shall certify the same to the clerk of the county court, and in case of a tie or contested election, it shall be determined by that tribunal."

In considering these statutes it should be borne in mind that when the county government of a part of St. Louis County was abolished and the city of St. Louis substituted therefor through the means of the Scheme and Charter, they were enacted as a part of the law carrying those changes into effect and prescribing what

existing duties should be performed by State and city officers which were formerly performed in that territory by State and county officers. By reading the first section quoted it will be seen that the design of the Legislature in enacting the statute was, not to create new duties, but only to designate the officers whose duty it was made to perform the services which had been previously created by chapter 28, Revised Statutes 1909. That statute in express terms provides that within the city of St. Louis all of the services required to be performed by the county clerk shall be performed by the city register and those required to be done by the county court shall be performed by the mayor of the city except in case of a tie or contested election, which shall be tried in the circuit court.

It will be observed that this statute did not provide for contesting the election of a constable or any other officer, but simply that the trial in such cases shall be had in the circuit court. In other words, that statute does not create an action to contest the election of a constable in the city of St. Louis, but simply provides that such action (if it exists) shall be brought in the circuit court. That is too clear for argument; and if the action exists it must be found in some other statute of the State.

Nor does section 2757, before quoted, have any application to the case at bar. That section expressly limits its operation to townships having a city of over one hundred thousand and less than three hundred thousand inhabitants. That statute could only apply to St. Joseph and Kansas City and not to the city of St. Louis, for we will take judicial notice of the fact that the latter city has a population far in excess of three hundred thousand, yea twice, if not three times, that number.

A similar question came before this court in the case of State ex rel. v. Hopkins, 87 Mo. 519, l. c. 527. In that case the Legislature, without conferring jurisdiction upon justices of the peace to try cases enforcing tax liens in favor of the State, simply assumed they

possessed such jurisdiction and enacted that "in all cases before justices of the peace where suit is brought for the enforcement of liens as above, where summons shall have been issued against any defendant," he not having been found, then an order of publication to issue, etc. In discussing that question the court, in speaking through NORTON, J., said: "The amendment thus made does not confer any jurisdiction upon justices of the peace, but simply provides the mode of exercising a jurisdiction which the General Assembly took for granted had been conferred, but which in fact had not been conferred," etc. The court then held the judgment void because the justice had no authority to try the cause. The same doctrine is announced in the following cases: State ex rel. v. Slover, 126 Mo. 652, l. c. 663-4; Postmaster General v. Early, 12 Wheat. l. c. 148, opinion by Chief Justice MARSHALL.

Under this view of the case as previously stated the circuit court of the city of St. Louis had no jurisdiction over the subject-matter of this suit.

III. Independent of the foregoing, I have carefully gone through this record, read the briefs and arguments of counsel and investigated the authorities cited, and as a result thereof I am clearly of the opinion that there is no merit in plaintiff's case and that the defendant was duly elected to the said office of constable.

We have been cited to no other statute creating this character of action, or, as counsel for defendant puts it, providing any machinery for such a contest; nor have we been able to find such a statute after a careful search therefor.

For the reasons stated the judgment is reversed and the petition for the contest is dismissed. *Walker, J.,* concurs; *Graves, C. J.,* concurs in separate opinion in which all concur.

GRAVES, C. J. (concurring).—I shall not attempt to review the statutes discussed by my learned brother WOODSON, nor to give an expression to an opinion thereon.

Contestant filed a blanket notice of contest. It covers a vast number of charges, most of which were never after adverted to in the case. It should be added that this voluminous notice nowhere alleges that contestee, Powers, had accepted the office or was in fact claiming the same. This may be by the wayside.

Contestee's answer was a denial of the things charged in the notice of contest. This was preceded, however, by a challenge to the jurisdiction, which challenge has been kept alive all through the case.

Upon the first report of the Election Commissioners, contestee had a majority of 54. The circuit court directed a recount and comparison of the ballots, and **Void Ballots.** upon such recount, by the report of the Election Commissioners, the contestee still had a majority of six. The circuit court after having gone through all of the ballots to which objections were made by either side finally found that contestant Turpin had been elected by 27 votes. In a memorandum filed with his judgment he states in detail his reasons for counting and rejecting the different classes of challenged votes. If therefore it appears that he has improperly counted more than 27 votes for Turpin, the majority for Turpin is gone, and the contestee should win. There is one class of 38 ballots, which were rejected by the election judges in the court for this office, and which were counted by the learned circuit judge for contestant Turpin, which in my judgment settles this case. The learned trial judge says that on 36 of these 38 votes, the name of the voter appears on the bottom of the ballot, and that on two of them the name of the voter appears to be written on the dotted line under the name of Turpin.

A reading of the record shows a sparring match between counsel for the respective parties as to these ballots, and the finding of the learned trial judge shows some sparring also. Counsel for contestant when offering the ballot would call it a ballot with the name of the voter written on the bottom of it. The position of counsel for contestee was that the extra name was written under the caption "Constable" and that made three

names thereunder, when the voter could not vote for but two, and that under the express terms of the statute, the votes were invalid. Their position is thus stated:

"Mr. Lashly: It is our position that the Board of Election Commissioners has no power to refer to the poll books for the purpose of finding out whether the name written was the name of the voter or of some other person, that the order of the court for re-count expressly forbade that, that the law forbids it, that even if the Election Board should determine whether the name under the caption 'constable' was the name of the voter or not, and even if it should appear that it was the name of a voter, a man has a right to vote for himself, and if he writes his name under the caption for the office in contest it constitutes three votes for that contested office, and therefore under the statute the ballot cannot be counted for either party."

This objection was carried throughout the record, as to this class of votes. The court in his findings fails to find that the last caption on the ticket was that of constable. We have before us photographs of both the Democratic and Republican tickets used in this election. Upon each, the last caption reads: "For constable, 4th District (vote for two)." This caption is near the bottom of the ticket. Below it on the Republican ticket appears the name of "Floyd E. Bush" and "Charles H. Turpin" and below each name is a dotted line. Just below the name of Charles H. Turpin, and the dotted line thereunder, is a small blank space, before the bottom or end of the paper ballot is reached. It will be noticed that Turpin's name is the last upon the ballot. In 36 of these 38 ballots the extra name was written below the dotted line, and in two of them on the dotted line just beneath Turpin's name, but in all 38 the extra name was in fact under the caption on the ticket. These facts fully explain the sparring of counsel. Under these facts, if we had a ballot upon which the name of Turpin had been erased and the name of Powers had been written thereunder, although not on

the exact dotted line, there would be no question that Powers would be entitled to the vote.

The question here is, does the addition of this extra name, leaving the other two unscratched, invalidate the ballot.

We think so. Section 5909, Revised Statutes 1909, reads:

"If a ballot should be found to contain a greater number of names for any office than the number of persons required to fill such office, it shall be considered as fraudulent as to the whole of the names designated to fill such office, but no further; but no ballot shall be considered fraudulent for containing a less number of names than are authorized to be inserted."

In each of these 38 ballots appears three names under the caption of constable, when there should have been but two, and under the statute, supra, the ballots are fraudulent and should not have been counted for Turpin. Our statute, supra, is but the expression of a general rule of law. Thus in McCrary on Elections, section 533, it is said:

"It is well settled that where a limited number of persons are to be chosen to fill a given office—as, for instance, where the law provides for the election by the same constituency of two Representatives in the State Legislature—a ballot containing the name of a greater number for that office is void. It was accordingly held in People v. Loomis, 8 Wend. 396, that where the number of constables to be chosen was limited to four, ballots containing the names of five persons designated as voted for for that office cannot be canvassed, but must be rejected.

Nebraska has practically the same statute as ours, and in State ex rel. Valentine v. Griffey, 5 Neb. l. c. 166, it is said:

"Again, each one of these ballots contains the names of two persons, and as this is a greater number than is required to fill the office, it is fatal to the validity of the ballots. The act entitled 'an act to provide a general election law,' in section thirteen, provides that

'whenever a ballot shall contain a greater number of names for any one office than the number of persons required to fill that office, it shall be deemed fraudulent as to the whole of the names for that office.' "

To like effect are, People v. Loomis, 8 Wend. 396; Clark v. Robinson, 88 Ill. 498; Blankinship v. Israel, 132 Ill. 514.

That there were but two constables to be elected for the district is clear. That there were three un-scratched names under the title "For Constables, 4th District" upon each of these thirty-eight ballots there is no question. That the ballots can not be counted for either of the three, under both our statute and the general rule is likewise clear. Rejecting these 38 votes counted for Turpin by the learned trial judge, as we think they must be rejected, Powers would be elected by eleven votes.

The learned trial judge predicates his ruling in counting these votes on the case of Lankford v. Gebhart, 130 Mo. 621. In that case the voters had written their names on the back of the ballots. This was the sole point ruled there. That this case is no authority here is too plain for argument. In the instant case these 38 voters had the right to write under the caption "For Constables, 4th District" the name of any person or persons that they desired to cast their ballot for at such election. This has been consistently ruled since Bowers v. Smith, 111 Mo. l. c. 52, whereat we said:

"By our Constitution general elections are held at certain fixed dates, and the right of suffrage is expressly secured to very citizen possessing the requisite qualifications. The new ballot law cannot properly be construed to abridge the right of voters to name their public servants at such elections, or to limit the range of choice (for constitutional offices) to persons nominated in the modes prescribed by it. Nominations under it entitled the nominees to places upon the official ballots, printed at public expense; but the Missouri

voter is still at liberty to write on his ballot other names than those which may be printed there.''

Whilst he may write on other names, if he wants his ballot to be effective he must not leave under the caption a greater number than is necessary to fill the office. In the instant case each of the ballots would have been legal had the voter, when he wrote under the caption the name he did write, taken the trouble to scratch the name of. Charles H. Turpin. He did not do it, and thus left three names under the caption, when there should not have been but two.

But it is urged that the names thus written under the caption were the names of the respective voters, and that this changes the situation. It does not change the legal situation in the least. Each voter had the right to vote for himself for constable, if he so desired. He had the right to write his own name for that office under the caption for that office, and had he scratched the name of Turpin, there would be a legal ballot, with one vote each for Bush, the other candidate with Turpin, and for the voter who wrote in his own name under that of Turpin. This is clear. That the three names on the ballot were under the caption for constable is clear from numerous photographs of ballots, in the record. These 38 votes were wrongfully counted for Turpin.

A casual examination of other contested votes impresses us that there were many more than the thirty-eight votes, supra, counted for Turpin, that were wrongfully counted for him, but we shall not go further, because these are decisive. We therefore concur in that portion of Judge Woodson's opinion wherein he says that there is no merit in contestant's claim of election, and think that to end a long drawn out fight, judgment should be entered here in favor of the contestee, holding that he was legally elected to the office, and against contestant for costs. It is so ordered.

All concur in these views.